UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAWRENCE ROBERTS, Individually, and as
Personal Representative of the ESTATE OF
JENNIFER ROBERTS, Deceased and as
Personal Representative of the ESTATE OF
JACK L. ROBERTS, Deceased and as Next
Friend of OLIVIA ROBERTS, a Minor,

        Plaintiffs,

Case Number: 04-73540

v.

JUDGE PAUL D. BORMAN
UNITED STATES DISTRICT COURT

BENNETT ENTERPRISES, INC., and Ohio
Corporation, d/b/a/ HOLIDAY INN EXPRESS-
MONROE, and HOLIDAY HOSPITALITY
FRANCHISING, INC., a Delaware
Corporation, Jointly and Severally,

        Defendants.
_____ /

**OPINION AND ORDER:**
**(1) GRANTING PLAINTIFFS' MOTION *IN LIMINE* TO PRECLUDE DEFENDANTS'**
**EXPERT FROM PRESENTING IMPROPER OPINION TESTIMONY (DOCK. NO. 35);**
**AND**
**(2) DENYING PLAINTIFF'S MOTION *IN LIMINE* - EVIDENCE OR ARGUMENT OF**
**ALLEGED "ABUSE" AND/OR "NEGLECT" (DOCK. NO. 39)**

Now before the Court is Plaintiffs' Motions *in Limine*. A motion hearing was held on

June 7, 2007. Having considered the entire record, and for the reasons that follow, the Court:

    (1)    GRANTS Plaintiff's Motion *in Limine* to Preclude Defendants' Expert from
           Presenting Improper Opinion Testimony; and

    (2)    DENIES Plaintiff's Motion *in Limine* – Evidence or Argument of Alleged
           "Abuse" and/or "Neglect."

**I.    FACTS**

1

Lawrence Roberts, as a personal representative of the Estate of Jennifer Roberts and the Estate of Jack Roberts, and Next Friend of Olivia Roberts (collectively "Plaintiffs"), filed a Complaint[1] against Bennett Enterprises, Inc. ("Bennett"), doing business as Holiday Inn Express – Monroe, and Holiday Hospitality Franchising ("HHF"), alleging negligence on the part of Bennett and HHF, and intentional infliction of emotional distress.

Plaintiff Lawrence Roberts is a resident of Michigan and the personal representative of the Estate of Jennifer Roberts and the Estate of Jack Roberts. (Am. Compl. ¶¶ 1, 2). Plaintiff Olivia Roberts is a minor and a resident of Michigan. (Am. Compl. ¶ 2). Bennett is an Ohio corporation doing business as Holiday Inn Express - Monroe (the "Hotel"). (Am. Compl. ¶ 4). The Hotel is located in Michigan. (*Id.*). HHF is a Delaware corporation, with its principal place of business in Georgia. (Am. Compl. ¶ 5).

This suit arises from an incident which occurred on September 14, 2001, at the Hotel. Lawrence and Jennifer – with their four year-old daughter Olivia and ten month-old son Jack – checked into the Hotel on their way to Ohio. (Def.'s Br. 5). The family checked into adjoining rooms, one of which had an in-room Jacuzzi. (*Id.*). At approximately 7:30 p.m., Lawrence filled the tub with a few inches of water in order to clean and scrub it before use. (Pls.' Resp. 6). Lawrence then went in a bathroom adjacent to the Jacuzzi area to help his daughter finish using the toilet. (*Id*). At this time, Jennifer Roberts was attending to other matters, apparently

---

[1] Count I: Negligence, Gross Negligence and or Wanton and Willful Misconduct of Defendant Bennett Enterprises.
Count II: Negligence, Gross Negligence and or Wanton and Willful Misconduct of Defendants Inter Continental Hotels Group PLC, Six Continents PLC, and Holiday Inn Corporation
Count III: Negligent Infliction of Emotional Distress

2

unpacking her children's clothes in the adjacent room. (*Id*.). While Jack Roberts was unattended, he climbed the stairs to the Jacuzzi and fell into the water. Lawrence heard his son fall into the Jacuzzi and pulled him out of the water. (*Id*.). Lawrence estimated that his son was in the water for roughly thirty seconds. (*Id*.).

The Hotel called emergency services, and Jack was rushed to the emergency room of Monroe Mercy Memorial Hospital. (Def.'s Br. 5). Jack had suffered second degree burns over eighty-five percent of his body, and Monroe Mercy Memorial Hospital was unequipped to handle his injuries. (Pls.' Resp. 7). Subsequently, Jack was airlifted to the University of Michigan Trauma Burn Center. (*Id*.). Jack died on September 17, 2006, as a result of complications from his burn injuries. (*Id*.).

A subsequent investigation of the accident concluded that the hot water tank was set at 128 degrees Fahrenheit. (*Id*.) After testing the temperature of the hot water tank during his investigation of the incident, Officer Foley turned on the water of the Jacuzzi at issue for several minutes. (Pls.' Resp. Ex. B, Monroe City Policy Dept. Incident Report 5). Officer Foley allowed the water to heat up and then placed his hand under the running water. (*Id*.) He noted that it "was slightly warmer than officer [sic] would use for bathing but was not so hot that officer's [sic] hand had to be removed due to the heat." (*Id*.). The investigation further revealed that Jack's injuries were not the result of foul play. (*Id*.).

Plaintiffs filed their Original Complaint on September 13, 2004, and their Amended Complaint on October 29, 2004. HHF filed its Motion for Summary Judgment on May 1, 2006. Plaintiffs filed their Response on May 30, 2006. There was no Reply filed by HHF.

At the motion hearing, the Court requested that Plaintiff file a supplemental brief

identifying the sections of the Standards Manual for hotel operations with which Defendant failed to comply. Plaintiffs filed the supplemental brief on July 21, 2006. On December 26, 2006, the Court denied HHF's Motion for Summary Judgment. *Roberts v. Bennett*, 2006 WL 3825067 (E.D. Mich. Dec. 26, 2007).

Plaintiffs filed the instant Motions *in limine* on March 12, and 13, 2007. Responses were field on May 29 and May 30, 2007. On June 7, 2007, the parties stipulated to the dismissal of Plaintiff Jennifer Robert's wrongful death claim, as well as the dismissal of six of the eight motions *in limine*. (Dock. Nos. 63-65).

## II. ANALYSIS

### A. **PLAINTIFFS' MOTION *IN LIMINE* TO PRECLUDE DEFENDANTS' EXPERT FROM PRESENTING IMPROPER OPINION TESTIMONY (DOCK. NO. 35)**

Plaintiffs argue that there is no scientific or technical basis for Defendants' Expert, Dr. John Wiechel's, testimony that it would have taken a minute or two for a ten month old baby to suffer second degree burns in 128 degree water. Plaintiffs point to Dr. Elaine Pomerantz's testimony stating that the injuries could occur at that temperature in a matter of seconds, and submits that Dr. Wiechel has not presented facts, data, or reliable principles and methods to support his testimony. Plaintiffs rely on Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993).

Defendants argue that while Dr. Wiechel could not identify specific studies to back up his opinion on exposure time necessary to create a burn injury, he refers to Mr. Hutter and Mr. Balanco, which gave some "specific numbers" and "sources," which back up his statement. Defendants contend that assuming that Dr. Wiechel's testimony is consistent with that evidence

he cited, *Daubert* and FRE 702 are satisfied and there is no reason to grant Plaintiffs' motion on his exposure time comment.

For the reasons stated on the record at the Court's June 7, 2007 hearing, the Court grants Plaintiffs' motion regarding Dr. Wiechel's statements on burn exposure time.

Plaintiffs next argue that there is no scientific or technical basis for Dr. Wiechel's testimony that he does not believe that plumber Dave Sobolewski left the hot water tank temperature at factor settings when installing the tank, as Sobolewski testified. Plaintiffs assert Dr. Wiechel has not presented facts or data to support his testimony. Further, Plaintiffs proffer that the hot water tanks were in the custody and control of Defendants for more than six months prior to the incident. Plaintiffs again rely on Rule 702 and *Daubert*.

Defendants argue that Dr. Wiechel is not contradicting Sobolewski's testimony, but offering an "cogent explanation" as to why Mr. Sobolewski's testimony was not correct.

Federal Rule of Evidence 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

"In *Daubert*, the Supreme Court provided a nonexhaustive list of factors which may, in any given case, bear on a trial judge's gatekeeping determination." *Johnson v. Manitowoc Boom Trucks, Inc*., 484 F.3d 426, 429 (6th Cir. 2007).

> These factors include: (1) whether a "theory or technique . . . can be (and has been) tested"; (2) whether the theory "has been subjected to peer review and publication"; (3) whether, with respect to a particular technique, there is a high "known or potential rate of error" and whether there are "standards controlling the technique's

operation"; and (4) whether the theory or technique enjoys "general acceptance" within a "relevant scientific community." Six years after issuing *Daubert*, the Court made clear in *Kumho* that these same factors are as applicable in the context of "engineering" testimony as in "scientific" testimony. The whole point of *Kumho*, after all, was that the distinction between "scientific knowledge" (at issue in Daubert and "technical or other specialized knowledge" (at issue in *Kumho*, as here) is fuzzy at best.

*Id*. (internal citations omitted). These factors are also not exhaustive in the engineering context. *Kumho Tire Company v. Carmichael*, 526 U.S. 137, 150 (1999).

Here, Dr. Wiechel had no knowledge of the factory minimum setting for the hot water tank at issue. He speculates that the water tank's factory setting was 60 or 70 degrees, but has not provided the Court evidence of the specific manufacturer's factory setting. Thus, the Court finds that the testimony is not based on sufficient facts or data, and is without any basis. Dr. Wiechel also had no knowledge of who had access to the water tank during the six months after installation, but before the incident, when it was in Defendants' sole control. Dr. Wiechel testimony only speculates that it was Sobolewski who adjusted the temperature because he was the only one who installed it, and that none of Defendants' employees made an adjustment. The statement does not meet the factors under Rule 702, nor does it show an application to the facts of the case in terms of Daubert. There is no showing that this expert has significant technical expertise in the specific area. Therefore, the Court grants Plaintiff's motion as to the second statement.

Accordingly, the Court GRANTS Plaintiffs' Motion *in Limine* to Preclude Defendants' Expert from Presenting Improper Opinion Testimony in its entirety.

**B**.   **PLAINTIFFS' MOTION *IN LIMINE* - EVIDENCE OR ARGUMENT OF ALLEGED "ABUSE" AND/OR "NEGLECT" (DOCK. NO. 39)**

The issue in this motion is relatively straightforward: Can Defendants admit evidence or

make an argument regarding whether Lawrence Roberts and/or Jennifer Roberts were negligent in their actions at the time of the incident. Plaintiffs rely on Federal Rule of Evidence 403, and argue that any allegations of abuse or neglect are simply not relevant, or if they are relevant and admitted, would unfairly prejudice its case. Plaintiffs support their position by arguing that there are no witnesses would could support the defense without impermissible speculation. Plaintiffs assert that there is no scientific or medical basis upon which Defendants could raise the defense. Additionally, Plaintiffs submit that Dr. Elaine Pomerantz, a doctor on the University of Michigan Hospital's Child protection Team, who investigated Lawrence and Jennifer Roberts, testified that a ten month old could easily crawl up the Jacuzzi steps and that the pattern of burns was inconsistent with child abuse. Plaintiffs also proffer John Krapohl's investigation for the Family Independence Agency, who determined that there was no evidence of abuse or neglect, including negligent supervision by either parent.

Defendants, on the other hand, assert the defense of ordinary negligence on the part of Plaintiffs Lawrence and Jennifer Roberts, in that they were negligent in putting the hot water in close proximity to an infant capable of failing into said water. Defendants maintain that even though no criminal charges were brought against Plaintiffs, such a decision does not shield Plaintiffs from the jury finding Plaintiff at least partially at fault due to negligence. Indeed, Defendants assert that a reasonable doubt standard is used in a criminal charge and just because a prosecutor does not feel there is a probability of meeting that standard does not mean a jury cannot find Plaintiffs were negligence by a preponderance of the evidence. According to Defendants, the issue is not whether Plaintiffs were criminally responsible for the death of Jack Roberts, but whether they acted reasonably under the circumstances presented – a question of

7

fact for the jury. Defendants note that parents of minor children do have some immunity granted by law, but that does not mean that a percentage of fault cannot be attributed to them.

For the reasons stated on the record, the Court DENIES Plaintiffs' motion.

## III. CONCLUSION

For the reasons stated above, the Court:

(1) GRANTS Plaintiffs' Motion *In Limine* To Preclude Defendants' Expert from Presenting Improper Opinion Testimony; and

(2) DENIES Plaintiff's Motion *In Limine* - Evidence or Argument of Alleged "Abuse" and/or "Neglect."

**SO ORDERED.**

s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: June 13, 2007

## CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on June 13, 2007.

s/Denise Goodine
Case Manager